1  WO

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Stanley Hall,                    )   CV 19-01530-PHX-SRB (MHB)
                                     )
10         Petitioner,               )   **REPORT AND RECOMMENDATION**
                                     )
11  vs.                              )
                                     )
12  Charles L. Ryan, et al.,         )
                                     )
13         Respondents.              )
                                     )
14  _____      )

15  TO THE HONORABLE SUSAN R. BOLTON, UNITED STATES DISTRICT COURT:

16         On February 28, 2019, Stanley Hall, who is confined in the Arizona State Prison,

17  Rincon - Rincon Unit, Tucson, Arizona, filed a *pro se* Petition for Writ of Habeas Corpus

18  pursuant to 28 U.S.C. § 2254 (hereinafter "habeas petition")[1]. (Doc. 1.) On July 31, 2019,

19  Respondents filed a Limited Answer (Doc. 14), and on August 20, 2019, Petitioner filed a

20  Reply (Doc. 17).

21                     **STATE PROCEDURAL BACKGROUND**

22         Petitioner was charged by a State of Arizona, Maricopa County, Grand Jury with one

23  count of aggravated assault, a class 3 dangerous felony. (Doc. 14-1, Exh. B.) The facts and

24  relevant procedural history are set forth in the Arizona Court of Appeals Memorandum

25  Decision, issued on April 4, 2017:

26  _____

27         [1]The Clerk of Court filing date is March 4, 2019, but pursuant to the prison mailbox rule,
    the date of filing is February 28, 2019, the date Petitioner certified it was placed in the prison
28  mailing system (Doc. 1 at 18). See 28 U.S.C. § 2254, Rule 3(d).

On February 5, 2015, Hall stabbed a man outside his apartment complex. A neighbor overheard and recognized Hall's voice at the time of the stabbing; the neighbor stepped out of his apartment and saw Hall running away.

When police officers arrived, Hall was gone and the back door of his apartment was open. Both the victim and the neighbor identified Hall as the assailant from a photographic lineup.

Officers discovered that Hall had purchased a bus ticket to San Antonio, Texas the morning after the stabbing. He was arrested in Texas and returned to Arizona to face an aggravated assault charge.

During an eight-day jury trial, the victim again identified Hall as his assailant. Hall testified, claiming he was not at the apartment complex at the time of the stabbing, and that he had been set up by the apartment owner/manager, who wanted to evict him.

The jury convicted Hall as charged, and the court subsequently sentenced him to 13 years in prison, with credit for 210 days of presentence incarceration.

(Doc. 14-1 at 118-126, Exh. N.)

Prior to trial, Petitioner requested, and was granted, permission to represent himself. The Arizona Court of Appeals summarized the circumstances surrounding that decision:

Shortly after his arrest, Hall requested that he be permitted to represent himself. He cited *Faretta v. California*, 422 U.S. 806 (1975), and noted that he had a constitutional right to represent himself and that he was "knowingly, intelligently, and voluntarily" forgoing counsel. He also filed a motion requesting advisory counsel.

The court engaged in a short colloquy with Hall regarding his ability to represent himself, as well as the potential dangers of doing so. Hall indicated that he had represented himself before, and neither Hall's appointed defense counsel nor the State opposed the motion, although the prosecutor noted that Hall had a previous guilty-except-insane conviction. The court then engaged in the following exchange with Hall:

COURT: You understand sir, particularly if you've previously represented yourself, you understand that unlike yourself Mr. Davis [defense counsel] has goine to college, Mr. Davis has goine to law school, Mr. Davis has now been practicing I think . . .10 years . . . He's been around. I've seen him. I know that he does good work. I know that he's prepared and able to do things. Do you understand that he's qualified?

HALL: I understand exactly what you're saying, Judge. The reason that I'm requesting to represent myself is basically because from the point of arrest in this case to right now I have received no evidence to support the manner in which this arrest was based.

COURT: Okay.

- 2 -

The court noted that individuals who represent themselves sometimes get so focused on small issues "they forget to see the big picture." The court asked Hall if he understood that a lawyer "should be provided" to help him, and Hall indicated that he did. The court then granted Hall's request to represent himself and appointed attorney Davis to serve as advisory counsel.

Hall subsequently filed several motions, some of which the court found difficult to understand or unintelligible. Hall alleged repeatedly that staff members at the county jail were thwarting his efforts at self-representation, and that the court should allow him to conduct his defense elsewhere. He apparently also believed that jail personnel were secretly filming him and that they had been sneaking psychotropic medication into his food.

Hall's defense focused, in part, on an alleged conspiracy against him by his landlord and law enforcement officials. Hall testified to his belief that the manager of his apartment complex had, on multiple occasions, snuck into his apartment and laced his food with psychotropic medication. He believed that this medication "create[d] the desire for a person to use illicit drugs." According to Hall, the manager did this in the hopes that Hall would break the law and thus enable her to evict him. Hall testified that the night of the stabbing he had gone to a local grocery store to buy Gatorade, which would help him fight off the effects of these drugs, and that he was not present at his apartment.

Twice during trial, Hall revealed information about his mental health history. First, before jury selection began, he suggested that he had previously been through Rule 11 competency proceedings. [fn 2, omitted]. Second, Hall testified about time he spent in a state mental hospital. After this second incident, the court excused the jury and warned Hall about the risk of discussing his mental health history in front of the jury. The court held a brief meeting in chambers with Hall's advisory counsel and the prosecutor regarding the proper course of action, and ultimately warned Hall that he should focus his testimony on the events of the night of the stabbing:

> Mr. Hall, when you and I first met it was that first initial pretrial conference and by then you had filed a large number of motions, many of which . . . demanded you be allowed to represent yourself. You and I talked about the representation and I allowed you to represent yourself.

> At that time I did not know that you may have had a stay in our state hospital. I did not know that you had been found guilty except insane. I did not know that. Sir, I granted you the opportunity to represent yourself and today I'm still questioning that and what we should do . . .

> [The prosecutor and advisory counsel] both agree they have no suggestions for me. I'm in a position where I have authorized you to be your own lawyer and I'm trying to make sure that you understand that these jurors are watching you and paying attention, but they also want to know what happened on February 5.

Hall assured the court he would skip a number of questions and get to the point. The court then said:

- 3 -

> Mr. Hall, are we on the same page for a little while? Are you ready to be your own lawyer again and do the things that you can do because I've told you a couple of times, I've watched you and you really do know what you're doing. But I'm concerned when I hear you wanting to tell these jurors about your stay at the state hospital when no one else could ever bring that out.

> After Hall affirmed that he was going to focus on the events of February 5, the court reiterated: "I watch you at times and you are very good at asking questions, but sometimes I wonder about you and I'm trying to make this decision There's nothing I'm going to do except start the trial back up. But my encouragement to you is stay focused on February 5." Hall did not mention his mental health history again.

(Id. at 120-23.)

On July 32, 2015, Petitioner was convicted by the jury as charged, and the jury found as aggravating factors that the crime was a dangerous offense and caused physical, emotional or financial harm to the victim. (Docs. 14-1 at 19; 1-1 at 4.) The trial court thereafter sentenced Petitioner to 13 years in prison, with 210 days of presentence incarceration credit. (Doc. 1-1 at 8.)

Petitioner appealed his judgment and sentence, asking again for permission to represent himself. (Doc. 14-1 at 29-30, Exh. F.) The Arizona Court of Appeals remanded to the trial court for a "*Faretta*-like" determination. (Id.) Petitioner completed an Affidavit in Support of Waiver of Appellate Counsel, and after holding a hearing, the trial court accepted Petitioner's waiver, but appointed the Office of Public Defense Services to act in an advisory capacity. (Id. at 36-37, Exh. H.) Petitioner later withdrew his request, and the Court of Appeals appointed advisory counsel as his counsel to represent Petitioner in all further proceedings. (Id. at 43, Exh. J.)

Petitioner's appointed counsel raised three issues on appeal: (1) "[w]hen the court discovered that [Petitioner] had serious competency issues, it abused its discretion by accepting and proceeding with an earlier Faretta waiver because that prior waiver was not knowingly, intelligently, and voluntarily made," (2) the court "erred in failing to assure [Petitioner]'s competency at all stages of the proceedings," and (3) that "the appellate court should adopt a higher standard of competency" for self-represented defendants. (Doc. 14-1 at 46, Exh. K.)

The Arizona Court of Appeals affirmed Petitioner's conviction, and after analyzing the claims, concluded:

> Given Hall's acknowledgment that the initial determination that he was competent to represent himself was not error, and given affirmative evidence of his ability to do so, he has not established a basis for setting aside his conviction. Hall's mental illness was not so severe that he was "unable to carry out the basic tasks needed to present his own defense without the help of counsel." *Edwards*, 554 U.S. at 175-76. And although the superior court expressed some misgivings about Hall's self-representation, the court noted on several occasions that Hall appeared to know what he was doing. Given the deference owed to the court's first-hand assessment of a defendant's continuing ability to represent himself, we cannot say that the court abused its discretion by not *sua sponte* ordering a competency proceeding and by allowing Hall to continue to represent himself.

(Doc. 14-1 at 125-26, Exh. N.)

Petitioner did not petition the Arizona Supreme Court for review. (Id. at 128, Exh. O.)

On April 14, 2017, Petitioner's appellate counsel filed a Notice of Post-Conviction Relief, providing notice that a claim of ineffective assistance of counsel would be raised and thus requesting that new counsel be appointed to represent Petitioner in post-conviction proceedings. (Doc. 14-1 at 130-132, Exh. P.) On April 20, 2017, the court appointed new counsel to represent Petitioner. (Id. at 140, Exh. R.) Appointed counsel thereafter filed a Notice of Completion of Post-Conviction Review, in which he stated that he had "communicated with Petitioner, reviewed the transcripts and all relevant documents . . ., and is unable to discern any colorable claim [to raise]." (Id. at 2, Exh. S.)

The court ordered that counsel remain in an advisory capacity and that Petitioner file a pro per PCR petition by July 27, 2017. (Doc. 14-2 at 5, Exh. T.) In his pro per PCR petition, Petitioner raised the following issues: (1) ineffective assistance of advisory trial counsel, appellate counsel, and advisory PCR counsel, (2) prosecutorial misconduct and selective prosecution, and (3) sixty-five arrest procedure, pre-trial and trial errors. (Id. at 8-25, Exh. U.) The trial court analyzed Petitioner's claims, and denied relief:

> In this matter, Mr. Hall decided to represent himself and adamantly rejected any encouragement to allow counsel to represent him. Additionally, although advisory counsel was assigned to assist, Mr. Hall pursued a course of conduct independent of his counsel's advice. In the petition for post-conviction relief, Mr. Hall complains that his advisory counsel was ineffective. In *State v. Russell*, 175 Ariz. 529, 858 P.2d 674 (App. 1993), the court found that "after waiving his right to counsel at trial, the defendant has no

constitutionally protected right to challenge the advice or service provided by advisory counsel." Absent a specific claim under the Rule 32, a petitioner cannot raise a claim for ineffective assistance. In the present petition, Mr. Hall claims that there were errors by his advisory counsel related to 1) whether there was a second 911 call, 2) information regarding an "open back door", 3) Mr. Hall's bus trip to San Antonio, 4) whether there was entrapment or obstruction, 5) regarding a video of his arrest, and 6) regarding the photograph used in the lineup. As to each, Mr. Hall fails to articulate a specific set of acts to support the issues. Further, Mr. Hall fails to identify the legal analysis or basis for the claim. Here, the generalized and unsupported statements are contradicted by the trial testimony and statements made on the record. Mr. Hall's petition fails as to claims of ineffective assistance as to his advisory counsel.

Mr. Hall argues that his appellate counsel was ineffective by failing to raise issues on his appeal. However, an appellate counsel is "not ineffective for selecting some issues and rejecting others." *See State v. Herrera*, 183 Ariz. 642, 647, 905 P.2d 1377 (App. 1995). To prevail on a claim, the petitioner must establish that there is a reasonable probability that but for appellate counsel's deficient performance; the outcome of the appeal would have been different. Mr. Hall's conclusory and deficient statements regarding the record fails to raise sufficient information for the court to consider or conclude that a reasonable probability of success exists. The actual record does not support Mr. Hall's claims and therefore, the petition is denied regarding the ineffective assistance of appellate counsel.

Third, Mr. Hall presents several alternative versions of facts, many of which are directly contradicted by the actual record, or are so unintelligible that they fail to identify factual or legal theories for relief. This Court has considered the record and it does not appear that any claim under the post-conviction relief petition asserts sufficient facts or legal argument.

(Doc. 14-2 at 46-47, Exh. W.)

Petitioner filed a petition for review in the Arizona Court of Appeals. (Doc. 14-1 at 52-53, Exh. Y.) Although the writing on the petition is partly faded and unreadable[2], Petitioner claimed trial court error relating to: (1) a 911 call, (2) information relating to an open back door, (3) Petitioner's trip to San Antonio, (4) entrapment or obstruction, (5) the video of his arrest, and (6) the photographic lineup. (Id.) Petitioner specifically noted that he was"not arguing ineffective assistance of counsel." (Id.) In his Reply, Petitioner disputed the state's claim that he had not raised ineffective assistance of counsel. (Doc. 1-2 at 2-4.)

---

[2]Respondents explain that the exhibit was obtained directly from the Arizona Court of Appeals, and that no clearer copy could be located. (Doc. 14 at 11 fn 2.) Petitioner did not attach a copy to his habeas petition.

The basis of his purported ineffective assistance of counsel claim was not clear however. (Id.)

The Arizona Court of Appeals accepted review and denied relief. (Doc. 14-2 at 74-75, Exh. AA.) "We have reviewed the record in this matter, the superior court's order denying the petition for post-conviction relief, the petition for review, the response and the reply. We find that petitioner has not established an abuse of discretion." (Id. at 75.) Petitioner sought review in the Arizona Supreme Court, but on January 25, 2019, the Court summarily denied review. (Doc. 14-2 at 77, Exh. BB.)

Petitioner timely filed his *pro se* habeas petition on March 4, 2019. (Doc. 1.) In his petition, he raises the following claims:

1.   The trial court violated Petitioner's Sixth and Fourteenth Amendment rights by committing various pretrial and trial errors.

2.   Petitioner's Fourth and Fifth Amendment rights were violated when Texas and Arizona jail officials took $572.00 from his inmate account during his transfer from Texas to Arizona, and when Petitioner was subject to an unlawful arrest, and invalid extradition proceedings.

3.   Petitioner's Eighth Amendment rights were violated by the presentation of false testimony to the grand jury, by the denial of his right to impeach witnesses at the grand jury and at trial, and by the setting of excessive pretrial bail.

4.   The trial court violated his Fifth Amendment rights by allowing improper impeachment of his testimony, by colluding with the prosecutor to ensure his conviction, by precluding evidence of the violent nature of the apartment complex, and by forcing him to testify at trial.

(Id. at 6-16.)

Respondent asserts that all of Petitioner's claims are procedurally defaulted without excuse. (Doc. 14.)

\\\
\\\
\\\

**DISCUSSION**

**Exhaustion and Procedural Default**

A state prisoner must exhaust his remedies in state court before petitioning for a writ of habeas corpus in federal court. See 28 U.S.C. § 2254(b)(1) and (c); Duncan v. Henry, 513 U.S. 364, 365-66 (1995); McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir. 1991). To properly exhaust state remedies, a petitioner must fairly present his claims to the state's highest court in a procedurally appropriate manner. See O'Sullivan v. Boerckel, 526 U.S. 838, 839-46 (1999). In Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by properly pursuing them through the state's direct appeal process or through appropriate post-conviction relief. See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999); Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994).

Proper exhaustion requires a petitioner to have "fairly presented" to the state courts the exact federal claim he raises on habeas by describing the operative facts and federal legal theory upon which the claim is based. See, e.g., Picard v. Connor, 404 U.S. 270, 275-78 (1971) ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). A claim is only "fairly presented" to the state courts when a petitioner has "alert[ed] the state courts to the fact that [he] was asserting a claim under the United States Constitution." Shumway v. Payne, 223 F.3d 982, 987 (9th Cir. 2000) (quotations omitted); see Johnson v. Zenon, 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court.").

Additionally, a federal habeas court generally may not review a claim if the state court's denial of relief rests upon an independent and adequate state ground. See Coleman v. Thompson, 501 U.S. 722, 731-32 (1991). The United States Supreme Court has explained:

> In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism. Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

Id. at 730-31. Thus, in order to prevent a petitioner from subverting the exhaustion requirement by failing to follow state procedures, a claim not presented to the state courts in a procedurally correct manner is deemed procedurally defaulted, and is generally barred from habeas relief. See id. at 731-32.

If a state court expressly applied a procedural bar when a petitioner attempted to raise the claim in state court, and that state procedural bar is both "independent"[3] and "adequate"[4] – review of the merits of the claim by a federal habeas court is ordinarily barred. See Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991) ("When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court.") (citing Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977) and Murray v. Carrier, 477 U.S. 478, 485-492 (1986)).

A procedural bar may also be applied to unexhausted claims where state procedural rules make a return to state court futile. See Coleman, 501 U.S. at 735 n.1 (claims are barred from habeas review when not first raised before state courts and those courts "would now find the claims procedurally barred"); Franklin v. Johnson, 290 F.3d 1223, 1230-31 (9th Cir. 2002) ("[T]he procedural default rule barring consideration of a federal claim 'applies only when a state court has been presented with the federal claim,' but declined to reach the issue for procedural reasons, or 'if it is clear that the state court would hold the claim procedurally barred.'") (quoting Harris v. Reed, 489 U.S. 255, 263 n.9 (1989)).

Specifically, in Arizona, claims not previously presented to the state courts via either direct appeal or collateral review are generally barred from federal review because an attempt to return to state court to present them is futile unless the claims fit in a narrow category of claims for which a successive petition is permitted. See Ariz.R.Crim.P. 32.1(d)-(h), 32.2(a) (precluding claims not raised on appeal or in prior petitions for post-conviction relief),

---

[3] A state procedural default rule is "independent" if it does not depend upon a federal constitutional ruling on the merits. See Stewart v. Smith, 536 U.S. 856, 860 (2002).

[4] A state procedural default rule is "adequate" if it is "strictly or regularly followed." Johnson v. Mississippi, 486 U.S. 578, 587 (1988) (quoting Hathorn v. Lovorn, 457 U.S. 255, 262-53 (1982)).

32.4(a) (time bar), 32.9(c) (petition for review must be filed within thirty days of trial court's decision). Arizona courts have consistently applied Arizona's procedural rules to bar further review of claims that were not raised on direct appeal or in prior Rule 32 post-conviction proceedings. See, e.g., Stewart, 536 U.S. 856, 860 (2002) (determinations made under Arizona's procedural default rule are "independent" of federal law); Smith v. Stewart, 241 F.3d 1191, 1195 n.2 (9th Cir. 2001) ("We have held that Arizona's procedural default rule is regularly followed ["adequate"] in several cases.") (citations omitted), reversed on other grounds, Stewart v. Smith, 536 U.S. 856 (2002); see also Ortiz v. Stewart, 149 F.3d 923, 931-32 (9th Cir. 1998) (rejecting argument that Arizona courts have not "strictly or regularly followed" Rule 32 of the Arizona Rules of Criminal Procedure); State v. Mata, 185 Ariz. 319, 334-36, 916 P.2d 1035, 1050-52 (Ariz. 1996) (waiver and preclusion rules strictly applied in post-conviction proceedings).

The federal court will not consider the merits of a procedurally defaulted claim unless a petitioner can demonstrate that a miscarriage of justice would result, or establish cause for his noncompliance and actual prejudice. See Schlup v. Delo, 513 U.S. 298, 321 (1995); Coleman, 501 U.S. at 750-51; Murray, 477 U.S. at 495-96. Pursuant to the "cause and prejudice" test, a petitioner must point to some external cause that prevented him from following the procedural rules of the state court and fairly presenting his claim. "A showing of cause must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [the prisoner's] efforts to comply with the State's procedural rule. Thus, cause is an external impediment such as government interference or reasonable unavailability of a claim's factual basis." Robinson v. Ignacio, 360 F.3d 1044, 1052 (9th Cir. 2004) (citations and internal quotations omitted). The petitioner must also show actual prejudice, not just the possibility of prejudice. U.S. v. Braswell, 501 F.3d 1147, 1150 (9th Cir. 2007).

Regarding the "miscarriage of justice," the Supreme Court has made clear that a fundamental miscarriage of justice exists when a Constitutional violation has resulted in the conviction of one who is actually innocent. See Murray, 477 U.S. at 495-96. Additionally,

pursuant to 28 U.S.C. § 2254(b)(2), the court may dismiss plainly meritless claims regardless of whether the claim was properly exhausted in state court. See Rhines v. Weber, 544 U.S. 269, 277 (2005) (holding that a stay is inappropriate in federal court to allow claims to be raised in state court if they are subject to dismissal under § 2254(b)(2) as "plainly meritless").

### Claims One through Four.

All of Petitioner's claims are unexhausted, as each claim relates to pre-trial and trial error and was not raised on direct appeal. On appeal, Petitioner raised one claim, and that claim related only to the question of Petitioner's competency to represent himself at trial. Claims not raised in an opening brief are generally waived. See State v. Guytan, 968 P.2d 587, 593 ¶ 15 (App. 1998). And, the time for Petitioner to file an appeal raising these new issues has long passed. See Ariz. R. Crim. P. 31.2(a)(2) (defendant must appeal within 20 days of sentence or order).

In his PCR petition, Petitioner raised claims of ineffective assistance of advisory trial counsel and appellate counsel. He does not raise those claims in his habeas petition. Petitioner also complained, in his PCR petition, of numerous factual errors, but the trial court found most of the claims unintelligible, and that any intelligible claim did not rise to a factual or legal challenge cognizable in PCR proceedings.

Any attempt now by Petitioner to return to the trial court and raise his habeas claims in PCR proceedings would fail, as he did not raise these claims on appeal, and has not raised claims that would exempt them from the timeliness requirements. See Ariz.R.Crim.P.32.2(a)(1) (precluding claims not raised on appeal), 32.4(b)(3)(a) (a PCR petition must be filed within 90 days after sentencing or within 30 days of issuance of mandate on appeal), 32.4(b)(3)(B) (claims raised pursuant to rule 32.1(b) through (h) must be raised within a reasonable period of time after discovery), 32.1(b) through (h) (claims of newly discovered material facts that would have changed the judgment or sentence, significant change in the law, actual innocence, sentence expiration). Petitioner's habeas claims are procedurally defaulted as he can not now return to state court to exhaust his claims.

Petitioner asserts various excuses for his procedural default. As to his failure to raise his claims on appeal, he alleges that his appellate counsel "used pysic medication in food and harmful deseases [Petitioner] suffered to much to be focused." (Doc. 1 at 6.) In Petitioner's Reply, he also claims that his custody prejudiced his defense," that he has suffered from "high blood pressure and heart problems," and that his appellate rights have been "sabataged," as the prison does not have a "Federally required law library." (Doc. 17 at 5-6.) Petitioner provides no factual support for these allegations. Petitioner also claims that the "new evidence" outlined in his habeas claims makes it "more likely than not that no juror would have convicted him." (Id. at 3.) Petitioner's claimed excuses lack substance, and his claim that he does not have access to a law library is belied by the legal citations and argument set forth in his habeas briefing. Additionally, Petitioner does not identify what "new evidence" exists, much less establish the new evidence would establish his innocence.

Petitioner does not establish cause for his procedural default, or a miscarriage of justice as a result of his conviction. As all of Petitioner's claims are procedurally defaulted without excuse, this Court will recommend that his habeas petition be denied and dismissed with prejudice.

## CONCLUSION

Having determined that Petitioner's claims in his habeas petition are procedurally defaulted without excuse, the Court will recommend that Petitioner's habeas petition be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) **DENIED** and **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

DATED this 16th day of March, 2020.


_____
Michelle H. Burns
United States Magistrate Judge